UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Chudury Akhtar Hussain,

                          Plaintiff,         09-CV-895
                                             (CPS)

          - against -
                                             MEMORANDUM OPINION
The United States of America; Eric Holder,   AND ORDER
Jr., Attorney General of the United
States; and the Bureau of Customs and
Immigration Services,

                          Defendants.

-----------------------------------------X

SIFTON, Senior Judge.

     On March 2, 2009, petitioner Chudury Akhtar Hussain

commenced this action against defendants United States of

America; Eric Holder, Jr., Attorney General of the United States;

and the Bureau of Customs and Immigration Services.  Petitioner

claims that the Administrative Appeals Office ("AAO") of the

United States Citizenship and Immigration Service ("USCIS")

abused its discretion when it dismissed his appeal of USCIS's

decision to deny his application for adjustment of status

pursuant to § 245A of the Immigration and Nationality Act

("INA"), 8 U.S.C. § 1255a.  Petitioner seeks a writ of mandamus

directing USCIS to re-open his application for adjustment of

status, to accept the affidavits and other materials submitted by

petitioner in connection with his application as credible and

sufficient to establish petitioner's continuous residence in the

United States from January 1, 1982 to May 4, 1988, and to adjust

his status to that of a lawful temporary resident. Presently
before this Court are the parties' submissions in response to my
Order dated March 11, 2009, directing them to show cause why the
relief requested in the petition should not be granted. For the
reasons set forth below, petitioner's request for a writ of
mandamus is denied.

**BACKGROUND**

The following undisputed facts are drawn from the petition
and supporting exhibits[1] as well as the parties' submissions in
response to my Order to Show Cause dated March 11, 2009.

The Immigration Reform and Control Act of 1986 ("IRCA"),
Pub. L. 99-603, 100 Stat. 3359, established an amnesty program
which provided aliens who had resided unlawfully in the United
States continuously since prior to January 1, 1982, the
opportunity to legalize their immigration status. *See Perez v.
I.N.S.*, 72 F.3d 256 (2d Cir. 1995); *see also* INA § 245A, 8 U.S.C.
§ 1255a. In general, INA § 245A(a) permits an alien to adjust
his status to that of a lawful temporary resident if he: (1)
timely files his application; (2) maintained continuous unlawful
residence in the United States since January 1, 1982; (3)
demonstrated continuous physical presence in the United States

---

[1] Plaintiff's petition and accompanying exhibits are unnumbered. In its opposition papers, the government attached a bates-stamped copy of the petition and exhibits for ease of reference. Accordingly, all citations herein to plaintiff's petition and accompanying exhibits refer to the bates-stamped copy attached to the government's papers.

since November 6, 1986; and (4) is admissible as an immigrant.
*See* INA § 245A(a)(1)-(4); 8 U.S.C. § 1255a(a)(1)-(4).

As a result of various court decisions in three class
actions which arose out of manner in which the IRCA program was
conducted by the former Immigration and Naturalization Service
("INS"), the Legal Immigration Family Equity Act ("LIFE Act")
amendments pertaining to legalization were enacted on
December 21, 2000. *See* Pub. L. 106-554, 114 Stat. 2763 (2000)
(codified as amended at 8 U.S.C. § 1255). On June 1, 2001,
regulations implementing the LIFE Act and LIFE Act Amendments
were promulgated which established procedures for certain class
action participants to become residents. *See* Adjustment of
Status Under Life Act Legalization Provisions, 66 Fed. Reg. 29661
(Jun. 1, 2001) (codified in part at 8 C.F.R. § 245a). As
explained in the commentary to these regulations, persons
eligible to apply for adjustment of status under section 1104 of
the LIFE Act are aliens who filed for class membership with the
Attorney General before October 1, 2000, in one of three
legalization lawsuits: (1) *Catholic Social Services, Inc. v.
Meese*, *vacated sub nom.*, *Reno v. Catholic Social Services, Inc.*,
509 U.S. 43 (1993) ("CSS"); (2) *League of United Latin American
Citizens v. INS*, *vacated sub nom.*, *Reno v. Catholic Social
Services, Inc.*, 509 U.S. 43 (1993) ("LULAC"); or (3) *Zambrano v.
INS*, *vacated*, 509 U.S. 918 (1993) ("Zambrano"). *Id*. In order to

be eligible for legalization under the LIFE Act, applicants must,
*inter alia*, have entered the United States before January 1,
1982, and from then until May 4, 1988, resided here continuously
and unlawfully. *Id.*; 8 C.F.R. 245a.15; *see also* LIFE Act §
1104(c)(2)(B)(i) and *Zambrano v. INS*, 282 F.3d 1145, 1152 (9th
Cir. 2002) (discussing LIFE Act amendments).

On December 6, 2001, petitioner filed an application to
adjust his status pursuant to § 1104 of the Life Act. *See* Pet.
at 1, 23. On September 30, 2007, the New York District Director
for USCIS issued a Notice of Intent to Deny ("NOID") on the
ground that petitioner had not established the requisite
continuous residence in the United States from January 1, 1982 to
May 4, 1988. *See id.* at 9-11 (copy of NOID). In particular, the
NOID explained that USCIS found the affidavits submitted in
support of petitioner's application to be insufficient, on their
own, to establish that petitioner had continuously resided in the
United States for the requisite period of time.[2] *Id.* at 10. The

---

[2] Specifically, the NOID explained as follows:

The only evidence that you submitted showing your residence in this
country during the statutory period were five (5) affidavits.
Affidavits submitted must be both credible and amendable [sic] to
verification. The affidavit must demonstrate proof that the affiant has
direct personal knowledge of the events and circumstances of your
residency. Credible affidavits are those which include some document
identifying the affiant, some proof the affiant was in the United States
during the statutory period, some proof that there was a relationship
between you and the affiant such as photos, etc., and a current phone
number at which the affiant may be contacted for verification.

Pet. at 10. The NOID reviewed the affidavits submitted by petitioner,
described their deficiencies, and concluded that "none of the affidavits
[petitioner] submitted meet the requirement as indicated above and are

NOID afforded petitioner 30 days to submit additional evidence
for USCIS's consideration.  *Id.* at 11.

Petitioner, through counsel, drafted a letter dated October
24, 2007, *see id.* at 34-37, and attached various documents, *id.*
at 39-59, in response to the NOID.  Those documents included:
computerized records of income tax payments by Khalid Mahmood,[3]
*id.* at 41-45; a copy of Popular Construction, Inc.'s corporate
filing with the New York Department of State, *id.* at 46; a copy
of Shafa Chaudry's credit card and driver's permit, *id.* at 47-48;
Khalid Mahmood's Social Security Benefit Statement, *id.* at 55-57;
and an affidavit dated August 8, 2004, by Khurshid A. Butt, *id.*
at 58-59.

On November 5, 2007, the New York District Director for
USCIS denied petitioner's application on the ground that
petitioner had not submitted a response to the NOID.[4]  *Id.* at 6

---

therefore deemed not credible."  *Id.*

[3] As explained in the NOID, Khalid Mahmood is one of at least five
persons who submitted affidavits in support of petitioner's claim to have
resided continuously in the United States from January 1, 1982 to May 4, 1988.
*See* Pet. at 10 (analyzing deficiencies of affidavits of Khalid Mahmood,
Mahmood Mian, Mohammad Choudhary, Shafa Chaudry, and Rashid Ahmed).

[4] It is unclear whether USCIS considered petitioner's October 24, 2007
letter and supporting documents in making its decision, or even whether USCIS
timely received the letter.  Petitioner does not provide the date he
purportedly submitted his response to the NOID.  Counsel for petitioner stated
in his administrative appeal brief that he "timely submitted a rebuttal with
additional evidence," and that he attached an overnight mail receipt showing
that such submission had been made.  Pet. at 30-31.  However, he did not
specify the date of the submission, and the papers attached to the petition
submitted to this Court do not contain an overnight mail receipt for a package
sent to USCIS on or about the date of petitioner's October 24, 2007 letter.
Regardless, because the AAO ultimately considered petitioner's response to the
NOID in its *de novo* review of petitioner's application, this factual

(copy of Notice of Decision). On or about November 30, 2007,
Hussain filed a Notice of Appeal (Form I-290B) from USCIS's
November 5, 2007, decision. *See id*. at 28 (copy of Form I-290B).
Attached to the Notice of Appeal was a brief, *see id.* at 30-33
(first four pages of brief), and a copy of Hussain's response to
the NOID, *id.* at 34-59.

On January 30, 2009, USCIS's Administrative Appeals Office
("AAO") dismissed petitioner's appeal. *Id.* at 21-26 (copy of AAO
decision). In its decision, the AAO explained that it had
considered petitioner's application *de novo*. *Id.* at 23. The
decision included an examination of each piece of evidence
submitted in support of petitioner's application, including
petitioner's response to the NOID.[5] *See id.* at 24-25. Among
other findings, the AAO noted as follows with regard to

---

discrepancy is immaterial.

[5] The decision also noted the absence of certain documentation:

In summary, the applicant has provided no employment letters that comply
with the guidelines set forth in 8 C.F.R. § 245a.2(d)(3)(i)(A) through
(F), no utility bills according to the guidelines set forth in 8 C.F.R.
§ 245a.2(d)(3)(ii), no school records according to the guidelines set
forth in 8 C.F.R. § 245a.2(d)(3)(iii), no hospital or medical records
according to the guidelines set forth in 8 C.F.R. § 245a.2(d)(3)(iv),
and no attestations from churches, unions, or other organizations that
comply with the regulation at 8 C.F.R. § 245a.2(d)(3)(v). The applicant
also has not provided documentation (including, for example, money order
receipts, passport entries, children's birth certificates, bank book
transactions, letters of correspondence, a Social Security card,
Selective Service card, automobile, contract, and insurance
documentation, deeds or mortgage contracts, tax receipts, or insurance
policies) according to the guidelines set forth in 8 C.F.R. §
245a.2(d)(3)(vi)(A) through (K).

Pet. at 25.

petitioner's evidence:

> The documentation provided by the applicant consists solely of third-party affidavits ("other relevant documentation"). These documents lack specific details as to how the affiants knew the applicant – how often and under what circumstances they had contact with the applicant – during the requisite time period from prior to January 1, 1982 through May 4, 1988.

*Id.* Based on its review, the AAO concluded that petitioner had failed to establish by a preponderance of the evidence that he had entered the United States before January 1, 1982, and maintained continuous unlawful residence since such date through May 4, 1988. *Id.* at 26.

Petitioner thereafter commenced this action on March 3, 2009.

## DISCUSSION

In its opposition papers, the government first argues that this Court lacks subject matter jurisdiction to review the AAO's decision, and therefore, that the petition should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In the alternative, the government argues that even if this Court were to retain jurisdiction to review the AAO's decision, petitioner's request for a writ of mandamus must be denied because the AAO did not abuse its discretion or otherwise err when it dismissed petitioner's appeal.

I. **Subject Matter Jurisdiction**

A. *Standard for Dismissal Pursuant to Rule 12(b)(1)*

Dismissal pursuant to Rule 12(b)(1) is appropriate where there is "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a "plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003). When a defendant moves to dismiss under Rule 12(b)(1), "a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Id.* In deciding a motion pursuant to Rule 12(b)(1), a district court may refer to evidence outside the pleadings, such as affidavits or documents, without converting the motion to one for summary judgment. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

B. *Whether Subject Matter Jurisdiction Exists*

The IRCA provides that there shall be no judicial review of an application for adjustment of legal status "except in accordance with this subsection." *See* INA § 245A(f)(1); 8 U.S.C. § 1255a(f)(1). The relevant subsection, section 245A(f), provides that a federal court may only review the denial of an application for adjustment of status in conjunction with the

review of a deportation or removal order.[6]  *See* INA §

245A(f)(4)(A), 8 U.S.C. § 1255a(f)(4)(A) ("There shall be

judicial review of such a denial only in the judicial review of

an order of deportation under section 1105a of this title (as in

effect before October 1, 1996)"); *Orquera v. Ashcroft*, 357 F.3d

413, 422-23 (4th Cir. 2003) (discussing history of §

1255a(f)(4)(A) and interpreting provision as providing court of

appeals with jurisdiction to review denial of adjustment of

status application in conjunction with review of removal order);

*Guzman-Andrade v. Gonzales*, 407 F.3d 1073, 1076-77 (9th Cir.

2005) (same).  The LIFE Act, pursuant to which petitioner brought

his application for adjustment of status, further provides that

"the provisions of subparagraphs (A) and (B) of section

245A(f)(4) of the Immigration and Nationality Act (8 U.S.C.

1255a(f)(4)) shall apply to administrative or judicial review of

a determination under this section or of a determination

respecting an application for adjustment of status under section

245A of the Immigration and Nationality Act filed pursuant to

this section."  *See* Life Act § 1104(f).  Therefore, pursuant to

INA § 245A(f)(4)(A) and the subsequent IIRIRA amendments, federal

---

[6] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-201, div. C, 110 Stat. 3009, replaced the former scheme of "deportation" proceedings with a new scheme of "removal" proceedings.  *See Orquera v. Ashcroft*, 357 F.3d 413, 417-18 (discussing IIRIRA's repeal of § 1105a and replacement of it with § 1252, which instituted new, and more restrictive, judicial review provisions governing review of orders of deportation).

judicial review of the denial of an application for adjustment of status under the LIFE Act is only available in conjunction with review of an order of removal.

In this case, there is no dispute that petitioner is not currently in removal proceedings, nor has an order of removal been issued against him.  Accordingly, because no order of removal has been issued against petitioner, judicial review of the denial of petitioner's status application is unavailable to him at this time.  Further, even if an order of removal had been issued against petitioner, judicial review of his status application in conjunction with that order would only be available in the Second Circuit Court of Appeals.  *See* 8 U.S.C. § 1252(a)(5) (providing, with exceptions not relevant here, that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal"); *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 112-13 (2d Cir. 2008).  Accordingly, I lack subject matter jurisdiction over the petitioner's claims for relief.

In his reply memorandum, petitioner argues that INA § 245A(f)(4)(A) cannot be interpreted to preclude judicial review of an adjustment of status application except in conjunction with review of a removal order because, if this were true, plaintiff would be left without any means of obtaining review of the AAO's

decision.  In support of this argument, petitioner notes that
IRCA's confidentiality provisions preclude USCIS from using the
information learned from a legalization application as a basis
for instituting removal proceedings against the applicant.  *See* 8
U.S.C. § 1255a(c)(5)(A); *Perez*, 72 F.3d at 259-60.  Thus,
petitioner argues that because the government cannot order him
removed, its interpretation of INA § 245A(f)(4)(A) "lacks a
rational basis."  Pet'r Reply at 6.  As the government points
out, however, while the government cannot itself initiate removal
proceedings against petitioner, nothing prevents petitioner
himself from requesting that removal proceedings be commenced
against him.  In the event that a removal order were issued
against petitioner, he could then obtain judicial review of
USCIS's denial of his application for adjustment of status.
Indeed, in cases involving similar facts, other plaintiffs have
requested to be placed in removal proceedings for this very
reason.  *See, e.g.*, *Orquera*, 357 F.3d at 415-16.  Thus,
petitioner's claim that judicial review of the denial of his
adjustment of status application is precluded under the
government's reading of INA § 245A(f)(4)(A) is incorrect.

Plaintiff also argues that subject matter jurisdiction over
his petition exists under the mandamus statute, 28 U.S.C. § 1361,
which provides that "district courts shall have original
jurisdiction of any action in the nature of mandamus to compel an

officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, as set forth in more detail below, plaintiff has not identified any duty USCIS owed to plaintiff and failed to perform. It is well established that mandamus jurisdiction does not attach to compel the favorable adjudication of an application. *See, e.g.*, *Keane v. Chertoff*, 419 F.Supp.2d 597, 599-601 (S.D.N.Y. 2006) (no mandamus jurisdiction where petitioner sought to compel defendant to rescind its decision to deny her adjustment of status application); *Espin v. Gantner*, 381 F.Supp.2d 261, 264-65 (S.D.N.Y. 2005) (no jurisdiction over an action to compel USCIS to approve adjustment application). Accordingly, the mandamus statute does not confer subject matter jurisdiction over the petition on this Court.

## II. **Whether the AAO Abused Its Discretion**

Even if subject matter jurisdiction over this action were to exist, plaintiff has failed to show that the AAO abused its discretion or otherwise erred when it dismissed his appeal of USCIS's decision to deny his application for adjustment of status. The AAO's "findings of fact and determinations . . . . shall be conclusive" unless a petitioner establishes either an "abuse of discretion" or that "the findings are directly contrary to clear and convincing facts contained in the record considered as a whole." 8 U.S.C. § 1255a(f)(4)(B). In addition, judicial

review "shall be based solely upon the administrative record established at the time of the review by the appellate authority." *Id.*

Petitioner states in his petition that the AAO was derelict in its duty "to accept the Plaintiff's affidavits and other materials under the LIFE Act." Pet. at 3. This position is unsupported by the record. Assuming the AAO had such a duty, that the AAO accepted and considered petitioner's evidence is made plain by its discussion in its decision of each affidavit and supporting documentation submitted by petitioner. To the extent petitioner argues that the AAO had a duty to deem the affidavits credible, petitioner is mistaken. *See* 8 C.F.R. § 245a.12(e) (providing that a LIFE Act applicant bears the burden of proof and that the "inference to be drawn from the documentation provided shall depend on the extent of the documentation, its credibility and amenability to verification").

Petitioner further contends that, "[c]ontrary to the AA[O] decision, the affidavits contained credible and verifiable information showing that the Plaintiff had indeed entered [the] U.S. prior to January 1, 1982 and lived continuously through the statutory period." Pet. at 3. A review of the AAO's decision, however, reveals that the AAO was within its discretion when it determined that petitioner's affidavits were insufficient to meet his burden of proof. In its discussion, the AAO set forth

specific explanations as to why it found the affidavits to be insufficient and/or unconvincing.  These included the fact that petitioner failed to include "specific details as to how the affiants knew the applicant – how often and under what circumstances they had contact with the applicant – during the requisite time period[.]"  Pet. at 25.  Based on its review, the AAO found that, particularly in the absence of any primary evidence as described by regulation at 8 C.F.R. § 245a.2(d)(3), the affidavits were insufficient to establish by a preponderance of the evidence that petitioner had continuously resided in the United States during the requisite period.  In light of this finding, the AAO was well within its discretion to deny petitioner's application.  Accordingly, even if I had jurisdiction to review the AAO's decision, plaintiff's claim would fail on its merits.

## CONCLUSION

For the reasons set forth above, petitioner's application for a writ of mandamus is denied.  The Clerk is hereby directed to transmit a copy of the within to the parties and to the assigned Magistrate Judge.

SO ORDERED.

Dated:    Brooklyn, NY
          August 3, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge